UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| Edward Thompson, | CASE NO.: 4:20-cv-10727 |
| PLAINTIFF, | |
| | Hon. Matthew F. Leitman |
| VS. | |
| | Magistrate Elizabeth A. Stafford |
| Lisa O. Gorcyca, Oakland County, | |
| Nancy T. Carniak, Friend of the Court | |
| (FOC) and Jennifer M. Paine. | |
| DEFENDANTS. | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'**

**MOTION TO DISMISS**

# TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED……………….…………………..……iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY……………………………1

STATEMENT OF FACTS…………………………………………....…………………………4

Plaintiff Filed for an Amicable Divorce, Engaging the Trial Court to Dissolve the Marriage only………………………………………………….……2

Plaintiff Entered into Legally Binding Contracts with Ex-spouse and Third Parties………………………………………………………………………2

Defendant Found Guilty of Committing Several Acts of Misconduct……..6

Defendants Engaged in intentional Acts of Fraud………………………9

Defendants Express Animosity Toward Plaintiff and Conspire to Deprive Plaintiff of Rights…………………………………………………………...11

Defendants Express Concern Regarding the Contracts Made Between the Parties then Illegally  Court Order Them to Attend Mediation………12

Plaintiff Enters into Written Agreement…………………………………14

Defendants Violate the Plaintiff's Rights Under  (Title 18, 28, 42) and 14th Amendment………………………………………………………15

STANDARD OF REVIEW……………………………………………………32

ARGUMENT……………………………………………………………………34

Plaintiff's Complaint Contains Sufficient Factual Allegations to State a Plausible Claim of Deprivation of Rights………………………………...35

Plaintiff's Complaint Contains Sufficient Factual Allegations to State a Plausible Claim of Conspiracy to Interfere with Civil Rights ...................36

Plaintiff's Complaint Contains Sufficient Factual Allegations to State a Plausible Claim of Conspiracy to Interfere with Civil Rights......................37

Plaintiff's Complaint Contains Sufficient Factual Allegations to State a Plausible Claim of to set Aside Judgement for Pursuant to Fed Rule 60..............................................................................................................38

CONCLUSION.............................................................................................40

## CONCISE STATEMENT OF ISSUES PRESENTED

I.     Whether Plaintiff's Complaint, viewed as a whole and in context, states a plausible claim that the defendants engaged in acts of fraud which are in violation of Fed Rule 60(b), Fed Rule 60(d),  Civil Rights Act of 1866, its 1870 reenactment and 1871,  Title XVIII, U.S. Constitution, Article I, Section 10, clause I, Fourteenth Amendment and Title XLII.

II.     Whether Plaintiff's Complaint, viewed as a whole and in context, states a plausible claim that Plaintiff's civil / constitutional rights were deprived in violation of the Civil Rights Act of 1866, its 1870 reenactment and 1871, Title XVIII, U.S. Constitution, Article I, Section 10, clause I, Fourteenth Amendment and Title XLII.

III.     Whether Plaintiff's Complaint, viewed as a whole and in context, states a plausible claim that Plaintiff was targeted due to his ethnicity in violation of the Civil Rights Act of 1866, it's 1870 reenactment and 1871, Title XVIII, U.S. Constitution, Article I, Section 10, clause I, Fourteenth Amendment and Title XLII.

IV.     Whether Plaintiff's Complaint, viewed as a whole and in context, states a plausible claim to set Aside Judgement Pursuant to Fed Rule 60(b), Fed Rule 60(d), Civil Rights Act of 1866, its 1870 reenactment and 1871, Title XVIII, U.S. Constitution, Article I, Section 10, clause I, Fourteenth Amendment and Title XLII.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1964-65 (2007)*

*Cooley v Carmike, Inc., 25 F3d 1325, 1333 (6th Cir 1994)*

*Swierkiewicz v Sorema, NA 534 US 506, 510 (2002)*

*Lentz v. Lentz, 271 Mich. App. 465 (Mich. Ct. App. 2006)*

*Scheuer v. Rhodes - 416 U.S. 232, 94 S. Ct. 1683 (1974)*

*Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985)*

*Troxel v. Granville, 530 U.S. 57 (2000)*

*Dennis v. Sparks, 449 U.S. 24 (1980)*

*Ex Parte Young, 209 U.S. 123 (1908)*

*Sherar v. Collen, 481 F. 2d 946 (1973)*

*Bell v. Hood, 327 U.S. 678 (1946)*

*Stricker v. Stricker, No. 349626 (Mich. Ct. App. Jan. 16, 2020)*

*Gascho v. Scheuer Hosp 589 F. Supp. 2d 884 (E.D. Mich. 2008)*

*Rory v. Continental Ins. Co., 473 Mich. 457, 468, 703 N.W.2d 23 (2005)*

*Norwood v. Renfield, 34 C 329; Ex parte Giambonini, 49 P. 732.*

*Genesee Foods Services, Inc. v. Meadowbrook, Inc. 762 N.W.2d 165 (Mich. 2009)*

*Davis v. Burris, 51 Ariz. 220, 75 P.2d 689 (1938)*

*Rankin v. Howard, (1980) 633 F.2d 844, cert. den. Zeller v. Rankin, 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2d 326*

*Monell v. New York City Dep't of Social Services, 436 U.S. 658, 700-701 (1978)*

This cases arises out of a Divorce filed by the Plaintiff, the parties entering in a written agreement that preceded orders and Default Judgement(s) (dates ranging from November 2015 thru August 2020) entered by the trial court ultimately awarding child support, sale of the Plaintiff's and third parties property whereby 100% of the proceeds were granted to the defendant of the case despite there being unsatisfied liens.  On or about January 19, 2016 (several months prior to the entry of default or judgement of divorce) the parties entered into a written agreement which contained the property settlement and the parties parenting arrangement.  Also, May 31, 2016 both parties had their briefs filed with the trial court.   The trial court records show gross irregularities in procedure, serves as evidence of the several events of misconduct, invention of facts, misuse of law and fraudulent actions conducted by the trial court.   The Default Judgement of Divorce was entered August 10, 2016.  Subsequently, in the years that following the initial Default Judgement, counsel for the Defendant continued to use the same unethical tactic of no notice to the Plaintiff but, the trial court granted the defendants motions.

Plaintiff filed an appeal and 450+ motions, notices and praecipes to enforce the contract between the parties and challenge jurisdiction because the Plaintiff has evidence that briefs were filed by both parties prior to the

2

entry of default (thus default was not an option for the trial court), notice was never sent for the third trial date of July 11, 2016, a default was NEVER entered by the clerk or trial court pursuant to MCR 2.603, no entry of default on the record, no notice of default was sent to the Plaintiff but a Judgement of Default was entered by the trial court.   After exhausting his administrative remedies, Plaintiff filed this action alleging fraud, misconduct, violation of due process, trial court refusing to dismiss void judgements for lack of jurisdiction and trial court refusing to enforce the contracts between the parties which are violations of the  of the Civil Rights Act, 42 USC § 1981,  42 USC § 1983, 42 USC § 1985, 18 USC § 242, U.S. Constitution, Article I, Section 10, clause I (the Contract Clause) and 28 USC § 41(1) (Due process of law) .  In lieu of an answer, Defendants have filed a motion to dismiss alleging that Plaintiff did not plead sufficient facts to state a plausible claim against the Defendants.  To justify their motions, Defendants ignore most allegations in the complaint except the defendants willfully and knowing depriving the Plaintiff of his right to contract, right to due process, fraud and the trial courts lack of jurisdiction.[1]

---

[1]  Although brought as a motion to dismiss prior to conducting discovery, Defendants' motion is actually a disguised summary judgement as it delves into the probative value of the fraudulent actions of the decision makers alleged in the complaint.  However, for purposes of this motion, the Court must accept the statements as true and construe all reasonable inferences in Plaintiff's favor.

However, a review of the entire complaint, demonstrates, that Plaintiff has pled specific non-conclusory facts which demonstrate plausible claims of fraud, due process violations, deprivation of rights and /or discrimination under Title XVIII, Title XLII, Title XXVIII, Article I § 10 of the Constitution, Article IV § 2 of the Constitution. The motion to dismiss, therefore, should be denied.

## STATEMENT OF FACTS[2]

## Plaintiff Filed for an Amicable Divorce, Engaging the Trial Court to Dissolve the Marriage only

The Plaintiff Edward Thompson, is a certified Network Engineer, who started a minority owned Global Consulting Company based out of Plano, Texas on or about August 08, 2017. Complaint ¶ 1-4.   The Plaintiff's Michigan residence alone is appraised at over $400,000. Complaint ¶ 5.

_____

[2] Although this motion is to be considered on the complaint alone, Defendants refusal to admit to the most basic of facts.  Although this factual presentation is improper and inappropriate, Plaintiff will respond to the factual presentation so that this Court has a complete picture of the circumstances which led to Plaintiff's filing of the complaint.

The Family Court is a state agency created by Act 236 1961, governed by 600 § 1021, is statue based authorized to handle cases of divorce and child support (this court has no authority to litigate contracts). Complaint ¶ 6. MCL 600.1021. Oakland County, Oakland County Sherriff's Office, Lisa O. Gorcyca, Friend of the Court (FOC), Nancy T. Carniak, Cheryl A. Matthews and Jennifer M. Paine operate in this judicial district.  This Court has subject matter jurisdiction over Thompson's Title 18 and Title 42 because the claims arise under federal law and diversity jurisdiction. The Court has personal jurisdiction over the Oakland County, Oakland County Sheriff's Office, Lisa O. Gorcyca, Friend of the Court (FOC), Nancy T. Carniak, Cheryl A. Matthews and Jennifer M. Paine because all the defendants conduct substantial business in the Eastern District of Michigan and the events giving rise to this action occurred in the Eastern District of Michigan. Venue is proper in the Eastern District of Michigan, Southern Division, because the events giving rise to the action occurred in this district and division.  Pursuant to 28 U.S.C. § 1331–2, 28 U.S.C. § 1367.Complaint ¶ 7-10.

Lisa O. Gorcyca is a Judge in the Family court division of the 6th Circuit court of Oakland County, actions taken by Judge Gorcyca has violated the Code of Judicial Conduct, as well as the due process and statutory rights of the parties and minor children. On June 24, 2015, Judge Lisa Gorcyca of the Oakland County Circuit Court, while presiding over a domestic relations case assigned to her, found the three minor children (then-aged 13, 10 and 9) of the parties in contempt of court and sent them to a juvenile detention facility to remain until their 18th birthdays for refusing to "have a healthy relationship with [their] father." The actions of Judge Gorcyca received worldwide attention from the media and was characterized by many media commentators as highly abusive toward minor children. The JTC issued a formal complaint against Judge Gorcyca where they concluded that Judge Gorcyca engaged in judicial misconduct and issued a 34-page Master's Hearing Report ("Report") documenting their findings and conclusions of law[3]. (Exh 3) Formal Complaint.  Complaint ¶ 11-14

_____

[3] Nearly 11,000 complaints about judges, filed by litigants, attorneys, and sometimes public officials, were terminated by the judiciary between 2010 and 2018. Of those, just 33 (less than 1/3 of 1%) resulted in any disciplinary action. The JTC concluded and the Michigan Supreme Court affirmed, Judge Gorcyca committed several acts of misconduct.

Friend of the Court is an independent agency, the state arm of the DHHS, in charge of child support collections, governed by Title 42 § 666, 45 cfr 303 Nancy T. Carniak is a Judge for 52-3 District Court of Oakland County, created by Const 1968, is authorized to process damage claims, disputes between tenants and landlords and other cases that involve money. Cheryl A. Matthews is a Judge for the 6th Judicial Circuit Court of Oakland County, responsible civil disputes over $5,000.00.  Jennifer M. Paine is a freelance attorney, sole owner and employee of the Pinnacle law firm, Paine was engaged by the defendant during the divorce.

Jennifer M. Paine was instrumental in the fraud and due process violations against Thompson. Kate Weaver and Rodney Yeacker are employees of the Oakland County  Friend of the Court (FOC), a Title IV-D agency, pursuant to 45 CFR § 75.2.  In 1975, President Ford signed Title IV-D (a non-positive law title) into law, meaning it's enforced through contract.

   The statutory "substantial compliance" requirement, see, e.g., 42 U. S. C. A. §609(a) (8) (Nov. 1996 Supp.), does not give rise to individual rights; it was not intended to benefit individual children and custodial parents, but is simply a yardstick for the Secretary to measure the systemwide performance of a State's Title IV-D program, allowing her to increase the

7

frequency of audits and reduce the State's federal grant upon a finding of substantial noncompliance.

Frank J. Lenz and Scott A. Patterson are employees of the Oakland County Sheriff's Office. Complaint ¶ 12-24

Thompson has worked in Network Engineering 30+ years, has achieved numerous accolades and certifications.  Thompson operates a Network Consulting company and is the Principal Consultant. Thompson was the top ranked Network Engineer during the hurricane Katrina communication restoral in West Palm Beach, Florida and later the Principal Consultant for the E911 system implementations in New Orleans, Louisiana. Thompson continues to service clients through his consulting company which is comprised mostly of Fortune 500 companies. Thompson was married to Latasha Thompson until he filed for divorce September 08, 2015.  Up until the filing of the divorce the parties didn't have any major arguments or fights and maintained an upper middle class lifestyle for their two children Ethan and Edward III.  Complaint ¶ 25-30

Immediately after the filing of divorce Latasha Thompson, family and friends began harassing Thompson, making threats to his person and property. Thompson kept detailed records of each incident, voicemail, and text message and police report.  Thompson filed for Personal Protect

Order(s) and was meant with increasing hostility from Judge Lisa Gorcyca and staff at each of the three hearings to which Judge Gorcyca denied all three requests without a valid explanation. (Exh 6).  Judge Gorcyca instructed Latasha to stop harassing Thompson,  surrender the truck keys, the keys to Thompson home located at 1410 Glass Lake Circle, Oxford, MI and only go to Thompson's home to pick up and drop off the children but refused to grant a PPO. Complaint ¶ 31-34

Thompson noticed he was being treated differently while at the PPO hearings, white women filing similar requests which were all granted PPO's by Judge Gorcyca but, very few of the women had any evidence to support their allegations.  November 2, 2015 the parties entered into an agreement whereby the parties agreed there would not be a child support account setup unless Latasha established a new home or apartment in Oxford, Michigan (so the children could comfortably continue to attend Oxford schools) and the children both agreed to stay with Latasha for at least a week at a time, this agreement was signed by both parties, Judge Gorcyca and Jennifer Paine. (Exh 7) Complaint ¶ 35-36

Thompson later discovered Judge Gorcyca, without there being a change in circumstances, without notifying any of the parties, erased the signed November 2, 2015 agreement between the parties from the court record,

replaced with a different agreement dated November 4, 2015 (supplied by

counsel for the defense), with no other signatures agreeing to contract

except Judge Gorcyca and no reference was made to the contract that was

signed by all the parties just two days earlier.[4]  The new void order is dated

November 4, 2015, ordering Thompson to pay Jennifer Paine $750 in

attorney fees, removes the provision of Latasha having to establish a

residence in Oxford, MI before the child support account can be setup and

Thompson was to pay child support retroactively since October 7, 2015

(even though the children lived 100% with Thompson). (Exh 8)[5] Complaint

¶ 37-38.  Although all the parties signed the order from November 2, 2015,

the agreed provisions were not met to start a child support account, the

trial court knowingly and willfully conspired to change the order. (Exh 9).

—————————

[4] Fraud upon the court" makes void the orders and judgments of that court. It is also clear and well-settled law that any attempt to commit "fraud upon the court" vitiates the entire proceeding. The People of the State of Illinois v. Fred E. Sterling, 357 Ill. 354; 192 N.E. 229 (1934).

[5] Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

The Michigan Child Support website serves as evidence the child support account was established November 09, 2015. (Exh 10).  November 15, 2015 Jennifer Paine sends an email to Thompson threatening to file a motion for contempt and immediate change of custody if Thompson doesn't agree pay attorney fees and outstanding child support. Paine also goes on to say contempt included up to 93 days in jail and $7500.00 in fines in addition to attorney fees. (Exh 11)[6] Complaint ¶ 39-40.  December 16, 2015 during a Motion to change custody, Thompson asked Attorney 1, can you tell me what the Judge is saying in the backrooms?  Why is Gorcyca and her staff so hostile toward me?  Attorney 1 replies "you're black, you make too much money and you're a male in divorce court in Oakland County", "the Judge says there's no way she's letting out of this divorce without having to pay child support".

———————

[6] A conspiracy is defined as an agreement between two or more persons to accomplish an unlawful purpose, or a lawful purpose by unlawful means. See Kronefeld v. First Jersey Nat. Bank, 638 F. Supp. 1454, 1468 (D.N.J. 1986). Although a conspiracy may be proven circumstantially, circumstantial evidence of a conspiracy must demonstrate more than mere possibility. "[P]roof of opportunity to conspire, without more, will not sustain an inference that a conspiracy has taken place." Tose v. First Pennsylvania Bank, N.S., 648 F.2d 879, 894 (3d Cir. 1981). The inference must be based on "reasonable probability that the conclusion flows from proven facts," and not on "mere speculation." Id. at 895.

Attorney 1 says "by now I'm sure Gorcyca has spread the word on the difficulties she's having with you, so you won't get a fair shake anywhere in Oakland County".   Don't say anything, let me do all the talking and hopefully I can get you out of here in one piece.  Also, there was talk of an order signed in November, god help you if that's true. Thompson asked Attorney 1 "what's Jennifer Paine's problem?  Why is she so nasty?  Attorney 1 says "she's very racist, she has it in for you in the worst way, she thinks she's a lot smarter than she actually is, so she can't be reasoned with".  Because Attorney 1 demanded an evidentiary hearing, the motion for change of custody ended with no change in the parenting time of the parties but Gorcyca did tell Thompson he was required by law to pay child support even though the children lived with him. (Exh 12) Complaint ¶ 41-45.  January 06, 2016 during the scheduled settlement conference the parties were prepared to present a final agreement to Judge Gorcyca and conclude the divorce.  Judge Gorcyca asked Thompson what are the terms of the agreement?  Thompson explained the debt division, asset division, parental custody, parenting time and the parties not wanting to use the services of the child support agency.  Judge Gorcyca became immediately agitated and left the courtroom with her clerk Inessa Nevelev.  A short time later Inessa Nevelev returns to the courtroom, says the Judge didn't like your agreement so she's not going to move forward

12

with the settlement conference and Judge Gorcyca orders you to attend

mediation.  Thompson tells Inessa Nevelev that he can't miss any more work

for court related matters that rescheduling all these unnecessary hearings

could cause Thompson to lose clients and potentially cost him millions in

revenue, especially matters that have already been resolved by the parties.

Thompson went on to say, the court isn't supposed to be bias, so he doesn't

understand why Judge Gorcyca cares what we agree to and the court has no

authority to interfere with our valid contract.[7]  Thompson insisted on

proceeding with the settlement conference because Judge Gorcyca not liking

the contract terms isn't a legal or acceptable reason to reschedule. Inessa

Nevelev thunders back at Thompson, says the Judge can cancel any hearings

and give whatever instructions she wants, Thompson was required by law to

attend mediation or he would be held in contempt of court, whereby he would

be thrown in jail and the court would take his children from him.

_____

[7] Pursuant to Const 1963, art 1, § 10, the Contract Clause of the Michigan
Constitution, provides that no law "impairing the obligation of contract shall
be enacted." The federal Contract Clause, US Const, art I, § 10, similarly
provides that no state shall "pass any . . . Law impairing the Obligation of
Contracts. . . ."

Inessa Nevelev and Jennifer Paine tried to convince Thompson to sign a Domestic scheduling order, but Thompson refused stating why have me sign a document to make it appear we had a settlement conference when Judge Gorcyca cancelled the hearing?  Thompson tells Inessa Nevelev, from Judge Gorcyca not allowing the settlement conference to move forward and looking at this scheduling order, this court is claiming a list of items in dispute, when all of these items have been resolved.  It's apparent this courts agenda is to prevent the parties from amicably resolving this case.  For the date of January 6, 2016, the court record states, "parties failed to appear".  (Exh 13) Complaint ¶ 46-55.  January 12, 2016, Jennifer Paine emailed Thompson the "Domestic Scheduling Order" from January 6, 2016, signed by Latasha Thompson, Inessa Nevelev, Jennifer Paine and Judge Lisa Gorcyca. The order states "plaintiff was present, refused to sign". (Exh 14-15) Complaint ¶ 56.  Despite the court's efforts, January 19, 2016 the parties entered into a final written agreement, outlining estate debts, assets and parental rights moving forward. (Exh 16) Complaint ¶ 57

On or about January 20, 2016 Thompson sent a copy of the contract to the FOC via fax and mail with a letter from Latasha Thompson dated January 15, 2016, stating there were no arrears owed and the parties did not want to use child support services moving forward. (Exh 17 - 18) Complaint ¶ 58.

14

On or about January 25, 2016 Thompson went to the Oakland County court house to file the contract between the parties with the clerk's office, Thompson was told by a supervisor, per the courts instructions, agreements by the parties wouldn't be accepted while the case was pending and should be presented at the next court hearing.

On or about the afternoon of February 9, 2016 Thompson was awaiting the return of his two children from school, neither child arrived at home at their normal scheduled times so Thompson began to worry.  Thompson called his oldest child Ethan to find his location, Ethan explained his little brother Edward III was with him and they were both intercepted at school by Rodney Yeacker from Oakland County.  Yeacker told Ethan if he didn't comply with his instructions that he would be sent to Children's Village which was a jail for children.   Ethan scared and confused complied with the instructions from Yeacker.  On or about the morning of February 10, 2016, Thompson called Rodney Yeacker, asked Yeacker did he intercept Ethan and Edward III from school?  Yeacker replied, yes.  Thompson asked Yeacker did he receive the settlement agreement and letter from the parties? Yeacker replied, yes.  Thompson asked Yeacker did he threaten Ethan with going to Children Village? Yeacker replied, yes.

Thompson tells Yeacker, since you received the settlement agreement you have written proof Latasha voluntarily waived all parental rights of the children and the parties specifically said we don't want to use the services of the child support agency, so at this point you're interfering with our right to contract. Yeacker tells Thompson "I take my direction from the courts, not you!" Thompson says fine, "please provide me the court order that instructed you to intercept my children" Yeacker hangs up the phone and doesn't answer when Thompson calls back.[8] Complaint ¶ 59

Thompson engages Attorney 2 to aid in enforcing the contracts between the parties. Attorney 2 tells Thompson to be careful because even though he has valid contracts with Latasha, forcing families to pay child support that don't want the service or not eligible for support is big business for the courts, the court have methods (highly illegal) of getting around the contracts and the Family Court Judges have the support of the higher courts because most of the Judges are in on the scam because of Federal funding to the County.

_____

[8] The action against the private parties accused of conspiring with the judge is not subject to dismissal. Private persons, jointly engaged with state officials in a challenged action, are acting "under color" of law for purposes of § 1983 actions. Dennis v. Sparks, 449 U.S. 24 (1980).

Attorney 2 says the reason the Judge Gorcyca became agitated at the settlement conference and wouldn't allow it to proceed is because Latasha was not opposed to the agreement, the court will not allow anymore proceedings until they can convince Latasha to oppose you, this is a normal (illegal)  tactic used in a divorce proceeding when children are involved.

The trial court and FOC (Kate Weaver)[5] made numerous threats toward Thompson in reference to mentioning the contract in open court. Thompson is invoking privileges and immunities clause under article 4 section 2. Thompson attempted to enter the contract into the court record and compel performance under agreement during the scheduled settlement conference January 06, 2016, but the parties were told by Inessa Nevelev, Judge Gorcyca's clerk that Judge Gorcyca did not like the terms of the contract, so the settlement conference would not be allowed to proceed and he was ordered to be a customer of a for profit business (attend mediation) (Exh 15) Complaint ¶ 75.

_____

A representation also includes a party's failure to disclose certain facts. See Sharp v. Idaho Inv. Corp., 95 Idaho 113, 122, 504 P.2d 386, 395 (1972) (reasoning that "oral representations, written false statements, and material omissions" could all sufficiently constitute a representation"); see (Schmeusser v. Schmeusser, 559 A.2d 1294, 1297, 1989 Del. LEXIS 165, at *7 (Del. Supr. 1989) ("Fraud may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak.").

Thompson again, attempted to enter the contract into the court record and compel performance under agreement during the scheduled trial date March 15, 2016, but the parties were told by Attorney 2, that Judge Gorcyca did not like the terms of the contract, so the scheduled trial would not be allowed to proceed.[9] Complaint ¶ 76

Thompson attempted to enter the contract into the court record and compel performance under agreement during the second scheduled trial date June 7, 2016, but the parties were told by Attorney 2 that Judge Gorcyca did not like the terms of the contract, so the scheduled trial would not be allowed to proceed and by Thompson refusing to change the terms of the contract for the third time he would not be permitted to participate in the court hearings moving forward[10]. Complaint ¶ 77

_____

[9] The court record serves as evidence of these highly irregular proceedings, both parties were present for the scheduled trial date(s), neither party requested an adjournment nor gave reason(s) for an adjournment pursuant to MCR 2.503. Judge Gorcyca made several attempts to coerce and threaten the Plaintiff, saying if he didn't agree to change the contract, things would go very bad for Thompson.

[10] It is through lawsuit against the state officers that state compliance with federal law is achieved. [T]he availability of prospective relief of the sort awarded in Ex Parte Young gives life to the supremacy clause. There can be no doubt that Title 42 [§1983] was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 700-701 (1978).

During the meeting in the backroom of Judge Gorcyca's courtroom, Jennifer M. Paine again disclosed to Latasha, "arrangements have been made, so long as you fight for child support, the Judge will ignore the contract between you two, unless Thompson is willing to change the terms contract and agree to pay child support".  Paine went on to say the Judge is willing to grant Latasha all of Thompson's assets and leave Thompson with all the debt.  Thompson thought Paine was making these statements in front of him to intimidate him into changing the contract.  As the parties left the chambers Judge Gorcyca remained in the hallway leading to the courtroom, staring at Thompson and kept repeating "it would be very smart if you changed the contract". Complaint ¶ 78-80.

On or about June 21, 2016 Attorney 2 informed Thompson that we would no longer be able to represent him regarding the divorce, Attorney 2 said his boss has a close personal relationship with Judge Gorcyca and demanded he drop the case.  Attorney 2 told Thompson he was not willing to risk his career defending him and that he would be filing a motion to withdraw,  Attorney 2 later sent an email stating the general points of the conversion.  (Exh 16). The court record serves as evidence, Attorney 2 scheduled the motion to withdraw for July 06, 2016. Complaint ¶ 81-82

Thompson requested permission from the trial court to join the hearing via phone.  Thompson paid the service fee, received the confirmation email from the JOL clerk and awaited a call from the court July 06, 2016 once the hearing started.  (Exh 17).  Complaint ¶ 83-84.  July 5, 2016, Thompson called the court to confirm the next trial date, the clerk informed Thompson the next court date was August 1, 2016. (Ex 18).

July 06, 2016, the motion to withdraw hearing proceeded but the court neither called Thompson to attend the hearing nor sent him a copy of the order from the hearing.   Unbeknownst to Thompson, June 02, 2016, Attorney 2's office sent notice of a third trial date scheduled for July 11, 2016 only to Jennifer Paine (Ex 19) Complaint ¶ 85

July 11, 2016 Thompson called the trial court to request his case be placed on another Judge's docket because the trial court had reschedule three hearings because Thompson refused to modify the contract between the parties.  The clerk informed Thompson his case was currently being heard,  Thompson informed the clerk he had received no notice of the trial date, a clerk from the court informed Thompson July 5, 2016, the trial date was scheduled for August 1, 2016, but with all that said he could be at the court in 45 minutes.  After a brief pause the clerk returned to the call, instructed Thompson not to

come to the court, the trial would be rescheduled and a notice would be sent to him.  (Exh 20). Complaint ¶ 86-87.

July 13, 2016 the clerk finally allowed Thompson to file a motion to enforce settlement agreement, Thompson attempted to enter the contract into the court record and compel performance under agreement during the Motion to Enforce Settlement dated July 20, 2016. (Exh 21). Complaint ¶ 88.

July 20, 2016, at the hearing to enforce the settlement agreement, Judge Gorcyca angrily informed Thompson she wasn't going to rule on his motion because a default had been entered against him.  Thompson explained he talked to a court clerk and there was no mention of a default being entered. Thompson then asked Judge Gorcyca to state for the  record why the court refused to enforce the agreement between the parties[10,11], Judge Gorcyca replied "She--we had a trial and she didn't feel that was in the best interests of the children and I took testimony and I agreed[12];  (Exh 22). Complaint ¶ 89.

_____

[11] It is well established that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts. Genesee Foods Services, Inc. v. Meadowbrook, Inc. 762 N.W.2d 165 (Mich. 2009).

[12] Once a settlement is reached, a party may not disavow it. Vittiglio v Vittiglio, 297 Mich App 391, 399; 824 NW2d 591 (2012). Courts are bound by property settlements reached through negotiations and agreements by parties to a divorce action in the absence of an exception such as fraud or duress. Id. at 400.

Per the transcript from the hearing on July 11, 2016 – there was no mention of the contract between the parties, so Judge Gorcyca has openly demonstrated bias and has no credibility in these proceedings.  (Exh 23) Complaint ¶ 90. July 25, 2016 Jennifer M. Paine filed a motion to enter default judgement. Complaint ¶ 91.  Thompson again, attempted to enter the contract into the court record and compel performance under agreement during motion to set aside default hearing August 10, 2016.  Judge Gorcyca ignored the numerous demands from Thompson to enforce the contract between the parties before irreparable harm came to Thompson and his family. Thompson engaged Attorney3 for the motion to set aside default.  Attorney 3 stated in the brief supporting the motion that the agreement between the parties comports to the rule, thus must be enforced by the court.  Judge Gorcyca told Attorney 3 if Thompson didn't agree to change the agreement, then she would not acknowledge it.  Attorney 3 explained to Thompson the whole default motion was a sham but he doesn't complain when Gorcyca did it for him so he can't complain when a client is being negatively affected.  Attorney 3 went on to say, everything needed to get the ruling overturned was included in the brief. (Exh 24) Complaint ¶ 91-97.

22

The court record serves as evidence, first motion to enforce the contract between the parties was filed July 13, 2016.  The trial court has knowingly and willfully deprived Thompson of his federally protected right to contract. The trial court has knowingly and willfully deprived Thompson of his right to due process.  The trial court has consistently ruled on matters concerning Thompson and his property without notice or proper service and later refusing to dismiss the actions.  Complaint ¶ 98-102.

August 24, 2016 during a show cause hearing Thompson explained to Kate Weaver of FOC, that he was the custodial parent of the children, he didn't consent to using their service, plus per the child support manual the custodial parents wages could not be garnished, Judge Gorcyca's orders were contrary to the agreement between the parties thus void and it was not possible to be in contempt of a void order. (Exh 25).  Kate Weaver told Thompson if he mentioned the agreement between the parties in open court, she would make sure he spent 60 days in jail.  Kate Weaver then shows Thompson a recommendation from stating the FOC recommends 45 – 60 days jail time for Thompson.  Attorney 3 and Rodney Yeacker were witnesses to the threats made by Kate Weaver toward Thompson.[5,6]  Complaint ¶ 103-104.

During the hearing Judge Gorcyca told Thompson he was required by law to surrender his children and sell his property located at 1410 Glass Lake Circle, Oxford, MI. (Exh 26)[13].   Thompson refuses to contract with the trial court until they provided proof of jurisdiction to change the terms of the contract between the parties.  Complaint ¶ 105-106

On or about November 21, 2017 Thompson received a call from the Oakland County Sheriff 1 Office inquiring to the whereabouts of Ethan Thompson.  Thompson told the Sheriff 1 the mother Latasha Thompson has waived all rights to the children and has no business filing any missing person reports concerning the children and any further communication concerning Ethan will be regarded as harassment.  The Sheriff 1 on the phone thundered at Thompson that he was required by law to surrender Ethan or would have Thompson charged with parental kidnapping, have Thompson fully extradited back to Michigan.  The Sheriff 1 went on to say Thompson would have to watch his back from now on and if he saw Thompson, he'd kill him himself. Complaint ¶ 107-110.

―――――――

[13] There can be no sanction or penalty imposed upon one because of his exercise of constitutional rights.  Sherar v. Collen, 481 F. 2d 946 (1973).

Thompson asked the Sheriff 1, "Why are you so elevated?" Laughed, said a few choice words, told the Sheriff to stop harassing him and hung up the phone. The Sheriff 1 texted Thompson "like this?" and the communication stopped. (Exh 27) Complaint ¶ 110.

On or about February 14, 2017 Sheriff 2 called to follow up on a missing person report concerning Thompson's oldest son Ethan. Sheriff 2 went on to explain Ethan was on the national missing person websites and databases.

Thompson explained to Sheriff 2, Ethan was never missing, Thompson and Latasha had a contract from January 2016 whereby Latasha waived all rights to the children and Thompson's property. Sheriff 2 asked for a copy of the contract and explained if the contract checked out, he would close out the complaint made by Latasha, remove Ethan from all the missing person databases and the contract would be kept on file so Thompson would receive no further issues from the Oakland County Sherriff's Office regarding the contract. On or about March 10, 2018, Thompson checked the missing person websites and database and being a man of his word Sheriff 2 removed Ethan's profile. Complaint ¶ 111-117.

On or about March 15, 2018 while searching the 52-3 case records, Thompson noticed an upcoming court hearing evicting his tenant at his Oxford, MI property scheduled for March 22, 2018. Thompson called the presiding Judge

Nancy T. Carniak clerk's office informing them that he was currently living in Texas, but he is the sole owner of the property in the complaint, Latasha Thompson signed a contract waiving all claim to the property, so Latasha was filing a false claim.  The clerk the hearing was going to proceed as scheduled.

Thompson filed a special appearance to the eviction, challenging the courts subject matter jurisdiction, sent a copy of the contract between the parties and asked to be allowed to attend the eviction hearing remotely via phone if it proceeded.  Judge Nancy T. Carniak' s clerk informed Thompson the Judge would neither allow him to participate at the hearing nor his response to be added to the court record because he was not named as a defendant in the complaint.   Judge Nancy T. Carniak proceeded with the hearing and entered a default Judgement in favor of the Plaintiff Latasha, which essentially stated Thompson was required by law to vacate his property located at 1410 Glass Lake Circle, Oxford, MI.[4-7, 10-13] (Exh 28) Complaint ¶ 118-122.

Thompson then filed a motion to intervene and the hearing was scheduled on or about April 27, 2018.  Thompson flew from Texas to Michigan to personally to attend the hearing, during the hearing Thompson demanded the courts default Judgement be dismissed for lack of jurisdiction. Jennifer Paine explained to Judge Nancy T. Carniak that the contract between the parties had been litigated and a Judgement rendered from the family court granted the

property to Latasha.  Thompson explained to Judge Nancy T. Carniak that the

contract had not been litigated and only a default Judgement had been issued

which had no mention of the contract between the parties and there was a

current lease between Thompson and the current tenant living at the property

so a second contract would be violated.  Thompson went on to explain to

Judge Carniak, Latasha does not dispute the contract, provided no evidence to

support her claim and no notice of the hearing or proof of service was

provided.  Thompson then demanded Judge Carniak produce proof of

jurisdiction or she would be willfully, and knowingly waiving immunity and

Thompson would file a complaint in a court of proper jurisdiction,   Judge

Nancy Carniak shrugged her shoulders and went back to talking to Jennifer

Paine.[14] (Exh 29) Complaint ¶ 123-128.

Judge Carniak then said she was not going to rule on the motion to intervene

and the hearing concluded. (Exh 30)[15].

_____

[14] "Once jurisdiction is challenged, the court cannot proceed when it clearly
appears that the court lacks jurisdiction, the court has no authority to reach
merits, but, rather, should dismiss the action." Melo v. US, 505 F2d 1026.
[15]"The law requires proof of jurisdiction to appear on the record of the
administrative agency and all administrative proceedings." Hagans v. Lavine,
415 U. S. 533.

Later Thompson discovered contrary to Judge Carniak' s statements made in open court, she did in fact sign the motion denying Thompson's claim.  (Exh 31).  Complaint ¶ 129-130.

June 6, 2018 Thompson filed a complaint against Latasha Thompson for breach of contract with jury trial, the case was assigned to Cheryl A. Matthews. July 3, 2018 Thompson filed a motion to compel enforcement of agreement scheduled for July 11, 2018.  July 9, 2018 Thompson filed the documentation and paid the service fee to attend the hearing remotely which was approved by the trial court.  July 11, 2018 the court did not call Thompson to attend the hearing.  Latasha Thompson did not respond to the complaint and per court rules a default judgement should have been issued but in a highly unusual action, Judge Cheryl A. Matthews dismissed Thompson's motion to compel enforcement of agreement.  (Exh 31) Complaint ¶ 130-135.  On or about July 16, 2018 Thompson engaged Attorney 3 to assist with the breach of contract complaint.  July 16, 2018 Judge Matthews filed a show cause hearing to dismiss Thompson's breach of contract complaint.

On or about August 1, 2018 during the show cause hearing, per Attorney 3, Judge Matthews was highly upset and thundering at Attorney 3 for taking the case to represent Thompson.

August 6, 2018 an ordered was filed dismissing Thompson's breach of contract complaint. (Exh 32).  Complaint ¶ 136-139.

On or about October 15, 2018 Thompson received a call from a family friend doing a check on Thompson's Oxford, MI property.  The friend informed Thompson all of his property was missing.  Thompson called the Oakland County Sheriff's Office to file a police report.  Thompson relayed the information from the family friend and explained the report would be necessary for Thompson to file a property loss claim to his perspective insurance companies of which he had active policies.  Frank Lenz of the Oakland County Sherriff's office went on to tell Thompson "abandoned property, eviction, and forfeiture of any claim or rights to the mentioned property directly from the courts.  Any further investigation into this incident will be in regard to you filing a false felony police report.  Your initial complaint is unfounded and closed."  (Lenz essentially told Thompson he was prohibited by law to file a police report regarding Thompson's property).  Thompson went on to tell Frank Lenz, the parties signed a contract January 2016 whereby Latasha Thompson waived any and all right to Thompson property and this contract was forwarded to the Oakland County Sheriff's Office in November 2017 and by refusing to investigate the claim the Oakland

County Sheriff's Office was denying Thompson the rights and ability to file a claim with the insurance companies.  (Exh 33)[7-8] Complaint ¶ 140-145. November 21, 2018 Judge Gorcyca signed an order to clarify, whereby no notice was sent to the Plaintiff, the order was contrary to the agreement between the parties, granted 100% of Thompson's property to Latasha, allowed the sale of Thompson's property in Oxford, MI without his consent and invalidated the lien that had been on the property since 2014 without satisfying the debt. (Exh 34)[14-15] Complaint ¶ 146.

During a show cause hearing May 15, 2019, Jennifer Paine tells Judge Gorcyca that Thompson had been served to his Texas address that he uses in his pleadings and emails but, the court record serves as evidence no address is included in proof of service documents.  This is the tactic used throughout the case.  Thompson's response challenged the jurisdiction of the trial court, the court ignored the response and granted the motion. (Exh 35).[4-6] Complaint ¶ 146-147.  February 29, 2020 Thompson was arrested in Texas for a bench warrant out of Michigan for child support arrears.  (Exh 36). Complaint ¶ 148. As of July 17, 2020, the trial court has refused to dismiss or vacate all judgement where the trial court lacked subject matter jurisdiction[16]. Thompson has lost all confidence of the Michigan State justice system.  Judge Gorcyca has never disclosed she was performing duties under a Title IV-D

contract. Judge Gorcyca has never disclosed receiving kickbacks from

Oakland County and attorneys. (Exh 37). Complaint ¶ 149-153.

_____

[16] A universal principle as old as the law is that a proceedings of a court without jurisdiction are a nullity and its judgment therein without effect either on person or property." Norwood v. Renfield, 34 C 329; Ex parte Giambonini, 49 P. 732. A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written. Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract. This Court has previously noted that "[t]he general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." [Rory v. Continental Ins. Co., 473 Mich. 457, 468, 703 N.W.2d 23 (2005) (quotation marks and citations omitted).] Thompson under the 14th amendment due process clause, Thompson cannot be deprived of property unless by a judgment of peers who has examined all the facts and evidence, and under no circumstances will Thompson waive any rights guaranteed to him in the United States Constitution. Without evidence introduced by the defendant this court must dismiss this matter with prejudice for failure to state a claim under federal rule 12(b) (6). It is well settled under Michigan law that a settlement agreement is binding until rescinded for cause, because this promotes settlement.
Gascho v. Scheurer Hosp 589 F. Supp. 2d 884 (E.D. Mich. 2008).

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6)

tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse*

*Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996). Under Federal Rule of Civil

Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570,127 S.Ct. 1955, 1964-65 (2007).

In the context of the legal claim asserted, the complaint must meet a minimal "plausibility" standard. *Id,* at 556. A complaint meets the requisite standard as long as it "gives the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v Pardus* 551 US 89, 93 (2007). Notice pleading is still the rule. *Ashcroft v Iqbal*, 556 US 662,678 (2009). As long as the complaint informs defendant of "how, when, and where [defendant] discriminated against [plaintiff]," it is sufficient to give defendant the requisite notice of the basis of a plaintiff's claims under the *Iqbal/Twombly* standards. *Fowler v UPMC Shadyside* 578 Fed 203, 212 (3rd Cir 2009).

As to the "plausibility requirement, the Supreme Court made clear in *Iqbal* and *Twombly* that plausibility does not require any showing of probable or likely success. On the contrary, a claim may proceed even if actual proof is "improbable" and "ultimate recovery unlikely." *Twombly,* 550 US at 556.[17] Furthermore, in determining whether plaintiff's complaint is plausible

the traditional principles favoring non-movants on motions to dismiss apply. Thus all factual allegations, so long as not merely conclusory, must be taken as true and construed in plaintiff's favor. *Iqbal* S.Ct at 1949-50. All reasonable inferences must also be drawn in plaintiff's favor. This was the rule before *Iqbal* and *Twombly* and it's still the rule today. *Phillips v County of Allegheny* 515 F3d 224, 231 (3rd Cir 2008). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor,* 675 F.3d 608, 611 (6th Cir.2012).

Finally, every complaint must be considered as a whole, not piece by piece. Brade v Wal-Mart Stores 558 F3d 585, 594 (8th Cir 2009). The courts must focus on what is pleaded, not on what a plaintiff is able to prove. Fowler, supra at 213 (district court should not conduct an "evidentiary inquiry" at the motion to dismiss stage). See also Twombly at 570 (plaintiffs may rely on discovery to reveal evidence and rejecting a heightened fact pleading requirement). It is defendant that bears the burden to show that no claim has been stated. Hedges v United States 404 F3d 744, 750 (3rd Cir 2005).

_____

[17] "Of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Iqbal*, supra at 556.

# ARGUMENT

## Plaintiff's Complaint Contains Sufficient Factual Allegations to State a Plausible Claim of Deprivation of Rights Under Color of Law

In this case, Plaintiff has pled that he was ordered to do things and told that such actions were required by law, when it is not required by law in violation of TITLE 18, U.S.C., § 242, makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States.

For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties. Persons acting under color of law within the meaning of this statute include police officers, prisons guards and other law enforcement officials, as well as judges, care providers in public health facilities, and others who are acting as public officials. It is not necessary that the crime be motivated by animus toward the race, color, religion, sex, handicap, familial status or national origin of the victim.

34

The offense is punishable by a range of imprisonment up to a life term, or the death penalty, depending upon the circumstances of the crime, and the resulting injury, if any.

### Plaintiff's Complaint Contains Sufficient Factual Allegations to State a Plausible Claim of Deprivation of Rights

In this case, Plaintiff has pled that he was deprived of due process of law and right to contract in violation of TITLE 42, U.S.C., § 1983, Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

**Plaintiff's Complaint Contains Sufficient Factual Allegations to State a Plausible Claim of Conspiracy to interfere with Civil Rights**

In this case, Plaintiff has pled that there was a conspiracy to deprive the Plaintiff of due process of law, right to contract, and property in violation of TITLE 42, U.S.C., § 1985, If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is

injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

### Plaintiff's Complaint Contains Sufficient Factual Allegations to State a Plausible Claim of Conspiracy to interfere with Rights

In this case, Plaintiff has pled that there was a conspiracy to deprive the Plaintiff of due process of law, right to contract, and property in violation of TITLE 18, U.S.C., § 241,  This statute makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same).

It further makes it unlawful for two or more persons to go in disguise on the highway or on the premises of another with the intent to prevent or hinder his/her free exercise or enjoyment of any rights so secured.

Punishment varies from a fine or imprisonment of up to ten years, or both; and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or

an attempt to kill, shall be fined under this title or imprisoned for any term of years, or for life, or may be sentenced to death.

### Plaintiff's Complaint Contains Sufficient Factual Allegations to State a Plausible Claim to set Aside Judgement Pursuant to Fed Rule 60(b)(4), Fed Rule 60(b)(6), Fed Rule 60(d)(2), Fed Rule 60(d)(3)

In this case, Plaintiff has pled that the trial court and / or defendants misconduct, fraud, void judgement or any other reason that justifies relief,

The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

38

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

(c) TIMING AND EFFECT OF THE MOTION.

(1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2) *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.

(d) OTHER POWERS TO GRANT RELIEF. This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2) grant relief under 28 U.S.C. §1655 to a defendant who was not

personally notified of the action; or

(3) set aside a judgment for fraud on the court.

## CONCLUSION

Therefore, for all the reasons given and authorities cited above,

Defendants' motion to dismiss should be denied so that this case can proceed

to discovery and a resolution on the merits by the jury.

By: /s/ Edward Thompson

Edward Thompson

Plaintiff

5760 Legacy Drive, Plano, TX 75024

248-996-9966

Dated: August 23, 2020        ed.thompson@charter.net

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above cause was served via the ECF filing system on August 23, 2020.

Daniel A. Klemptner (P68691)

Senior Assistant Corporation Counsel

Attorney for Defendants, Lisa O. Gorcyca,

Oakland County, Friend of the Court (FOC)

And Nancy T. Carniak

1200 N. Telegraph Road, Bldg. 14E

Pontiac, MI 48341-0419

(248) 858-2007

dklemptner@oak.gov


PINNACLE FAMILY LAW

Jennifer M. Paine (P72037)

Attorney for Defendant

39555 Orchard Hill Place, Suite 600

Novi, Michigan 48375

(248) 305-6484 / (989) 493-3575

jpaine@pinnaclefamilylaw.com


Respectfully submitted,

By: /s/ Edward Thompson

Edward Thompson

Plaintiff

5760 Legacy Drive, Plano, TX 75024

248-996-9966

Dated: August 23, 2020          ed.thompson@charter.net