UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD THOMPSON,            Civil Action No.: 20-10727
                            Honorable Matthew F. Leitman
            Plaintiff,       Magistrate Judge Elizabeth A. Stafford

v.

LISA O. GORCYCA, *et al.*,

            Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT
MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION [ECF NO. 30]**

**I.     Introduction**

In his amended complaint, *pro se* Plaintiff Edward Thompson makes

claims arising from state court proceedings.  [ECF No. 9].[1]  As directed by

the Court, Defendants Lisa O. Gorcyca, Oakland County, Friend of the

Court and Nancy T. Carniak (collectively, "the Oakland County

defendants") moved to dismiss for lack of subject matter jurisdiction.  [ECF

No. 30].  Thompson has responded.  [ECF No. 31].

_____

[1] The Honorable Matthew F. Leitman referred the matter to the
undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  [ECF No.
7].

Defendant Jennifer Paine filed no answer to Thompson's amended complaint and the Clerk of Court thus entered a default against her.  [ECF No. 27].  But the Court has an independent duty to ensure subject matter jurisdiction over claims before it.  *In re DePuy Orthopaedics, Inc. ASR Hip Implant Prod. Liab. Litig.*, 953 F.3d 890, 893-94 (6th Cir. 2020); *Blaszczyk v. Darby*, 425 F. Supp. 3d 841, 845 (E.D. Mich. 2019).  And the entry of default should be vacated if the Court lacks subject matter jurisdiction. *Murdock v. Am. Axle & Mfg., Inc.,* No. 03-CV-73744-DT, 2003 WL 25816431, at *2 (E.D. Mich. Dec. 23, 2003); *Golden v. Nat'l Fin. Adjusters*, 555 F. Supp. 42, 45 (E.D. Mich. 1982).

Because this Court lacks subject matter jurisdiction over Thompson's claims, the entry of default against Paine should be vacated, and the complaint should be dismissed.

## II.    Background

In his amended complaint, Thompson asks the Court to find that Judge Gorcyca of the Oakland County Court erred and denied him due process during his divorce and custody proceedings.  [ECF No. 9, PageID.78-91].  He says that he is an American of African ancestry and that Judge Gorcyca granted personal protection orders (PPO) to white

women who had little evidence to support their allegations, but denied him a PPO.  [ECF No. 9, PageID.73, 78].

Thompson asserts that Judge Carniak, a Michigan district judge, wrongfully evicted a tenant from a property belonging to him based on a false claim of Latasha Thompson, his ex-wife.  [*Id.*, PageID.93-95].  After the eviction, Thompson sued Latasha for breach of contract in Oakland County Circuit Court, but Judge Cheryl A. Matthews (a nonparty) dismissed the complaint.  [*Id.*, PageID.95-96].

Thompson reported to the Oakland County Sheriff's Office that Latasha had waived all claims to the Oxford property, but Judge Gorcyca then clarified in an order that she had granted Latasha all of Thompson's property.  [*Id.*, PageID.97-98].  Thompson asserts that Judge Gorcyca acted without jurisdiction and failed to enforce agreements he had with Latasha.  [*Id.*, PageID.98-99].  He also accuses Judge Gorcyca of not disclosing that "she was performing duties under a Title IV-D contract"[2] or that she was "receiving kickbacks from Oakland County and attorneys." [*Id.*, PageID.98].

---

[2] Title IV-D describes the requirements a State must meet to qualify for funds under the federal Aid to Families with Dependent Children (AFDC) program.  *See Blessing v. Freestone*, 520 U.S. 329, 333 (2018) (citing 42 U.S.C. §§ 651-669b).

Paine is an attorney who apparently represented Latasha during the divorce and custody proceedings.  [ECF No. 9, PageID.76].  Thompson claims that Paine "was instrumental in the fraud and due process violations" against him, threatened him and tried to intimidate him.  [*Id.*, PageID.76, 80, 87].  And he says that Paine falsely said that she had served him with a motion to show cause.  [*Id.*, PageID.98].

Counts I to VI of Thompson's complaint allege violations of "Title 18 of the Civil Rights Act" and "Title 42 of the Civil Rights Act."  [ECF No. 9, PageID.100-109].  He specifies no statutes under those titles.  [*Id.*].

As relief, Thompson requests compensatory, punitive and statutory damages; an award for the market value of rents from the Oxford property; an order voiding for lack of jurisdiction all the State court judgments and orders about Thompson's property; sole custody of his son; "[a]n order closing the child support account, removing arrears, reimbursing Thompson for all monies ordered, garnished, stolen or seized, plus the 66% matching federal funds"; and an order removing the occupants of the Oxford property.  [ECF No. 9, PageID.109-110].

## III.    Analysis

### A.

A plaintiff must show that the court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," or that jurisdiction is proper because of the diversity of citizenship of the parties. 28 U.S.C. §§ 1331, 1332.  Thompson claims both federal question and diversity jurisdiction.  [ECF No. 9, PageID.73].  But he states only claims under federal civil rights laws.  [*Id.*, PageID.100-109].  Thus, the question is whether the Court has federal question jurisdiction under § 1331.

The Oakland County defendants' motion to dismiss relies on Thompson's pleadings and thus makes a facial attack on subject matter jurisdiction.  *Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, 440 (6th Cir. 2012).  Because the defendants are making a facial attack, the Court must accept the allegations in Thompson's amended complaint as true.  *Id.*

Thompson's allegations must plead a colorable claim supporting subject matter jurisdiction.  *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 513 (2006).  "Federal courts lack subject-matter jurisdiction when an asserted federal claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a

federal controversy." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 (2009) (citation and quotation marks omitted).  And though courts give a more liberal reading to pleadings filed by *pro se* litigants than to those drafted by lawyers, a *pro se* complaint still must plead facts showing that Court has jurisdiction.  *Christenberry v. White,* No. 3:20-CV-176-TAV-DCP, 2020 WL 6371174, at *3 (E.D. Tenn. Oct. 29, 2020)*.*

**B.**

Thompson fails to state a colorable claim supporting subject matter jurisdiction.  First, the Court lacks jurisdiction over Thompson's child custody claims.  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (federal courts lack power to issue domestic relations decrees, including those about child custody); *Hooks v. Hooks*, 771 F.2d 935, 942 (6th Cir. 1985) (same).  Prior binding decisions foreclose Thompson's requests that this Court award him custody of his son and relieve him of orders to pay child support.

Second, the Oakland County defendants rightly argue that, under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to review the state court judgments.  That doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

6

review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The Court has no jurisdiction "to review and reverse unfavorable state-court judgments." *Id.* at 283.

The *Rooker-Feldman* doctrine derives from 28 U.S.C. § 1257(a),[3] which gives the Supreme Court limited jurisdiction to review a decision of a state's highest court.  *See Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).  The doctrine is based on "the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not occur in the lower federal courts." *Id.* at 309.  And the intent is to "prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision." *Id.*

---

[3] "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States." § 1257(a).

But the *Rooker-Feldman* doctrine is "limited in scope" and does not

"bar 'a district court from exercising subject-matter jurisdiction simply

because a party attempts to litigate in federal court a matter previously

litigated in state court.'"  *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951

F.3d 397, 402 (6th Cir. 2020) (quoting *Exxon Mobil,* 544 U.S. at 282).

*Rooker-Feldman* applies "[i]f the source of the plaintiff's injury is the state-

court judgment itself."  *Id.*  "If there is some other source of injury, such as a

third party's actions, then the plaintiff asserts an independent claim."

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).  But if "a third

party's actions are the product of a state court judgment, then a plaintiff's

challenge to those actions are in fact a challenge to the judgment itself."  *Id.*

To assess the source of a plaintiff's claimed injury, the Court must consider

the plaintiff's claims for relief.  *VanderKodde*, 951 F.3d at 402.

In *McCormick*, the court held that the *Rooker-Feldman* doctrine did

not bar the plaintiff's claims that the defendants committed fraud and

misrepresentation in divorce proceedings.  451 F.3d at 392.  The doctrine

also did not preclude claims that the defendants failed to make the plaintiff

a party to litigation to prevent her from asserting her property rights.  *Id.*

The court held that these claims did not assert an injury caused by the

state court judgments themselves.  *Id.*  "Instead, Plaintiff asserts

8

independent claims that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means." *Id.*

**B***.*

In response to the Oakland County defendants' motion to dismiss, Thompson states that he "does not seek to set aside the judgments of the Michigan courts based on alleged legal errors by those courts. Rather, he seeks to set aside these judgments based on the alleged extrinsic fraud by defendants that produced those judgments." [ECF No. 31, PageID.1949]. Thompson argues that the Oakland County defendants' motion ignored "numerous allegations of fraud throughout the complaint." [ECF No. 31, PageID.1952]. Thompson's reliance on alleged fraud on the court lacks merit.

First, although *Rooker-Feldman* does not bar claims that a state court judgment was procured by the fraud of third parties, a judge who presides over an action is not a third party. *Hall v. Callahan*, 727 F.3d 450, 454 (6th Cir. 2013). Thus, the claims against Judges Gorcyca and Carniak "directly implicate[ ] *Rooker-Feldman* concerns." *Id.*

Second, although Thompson claims that he made numerous allegations of fraud, his amended complaint mentions fraud only once.

9

[ECF No. 9, PageID.76].  In conclusory form, Thompson alleges that Paine

"was instrumental in the fraud and due process violations against

Thompson."  [ECF No. 9, PageID.76].  None of the counts of Thompson's

complaint sound in fraud; instead they allege violations of his civil rights

under Titles 18 and 42.  [*Id.*, PageID.100-109].

   And none of Thompson's factual allegations make a colorable claim

that Paine committed fraud to procure a court judgment.  The allegation

that comes closest to alleging fraud is that Paine falsely told Judge

Gorcyca during a May 2019 show cause hearing that Thompson was

served at his Texas address.  [ECF No. 9, PageID.98].  Thompson does

not specify the document that Paine allegedly failed to serve, but the Court

infers that he means a motion to show cause.  Thompson says in the next

paragraph that his "response challenged the jurisdiction of the trial court,

[but] the court ignored the response and granted the motion."  [*Id.*].  Since

Thompson was able to respond to the motion to show cause, this case is

distinguishable from the *McCormick* plaintiff's claim that the defendants'

actions precluded her from asserting her property rights.  451 F.3d at 392.

   Thompson's remaining allegations against Paine are that she

threatened him in an email that she would file a motion for contempt and

immediate change of custody if he did not pay attorney's fees and

10

outstanding child support; that she tried to convince him to sign a domestic

scheduling order; and that Paine attempted to intimidate Thompson into

agreeing to change a contract by saying that Judge Gorcyca would grant

Latasha all of his assets.  [ECF No. 9, PageID.79-80, 82-83, 87].  He does

not allege that the state court made any decisions because of those actions

by Paine.  As such, the allegations against Paine do not support a

colorable claim that she procured a court judgment by fraud or other

misconduct, or that she violated Thompson's civil rights under Titles 18 or

42.

Thompson also makes no colorable claim that the Friend of the Court

(FOC) procured a judgment by fraud or violated his civil rights under Titles

18 or 42. [ECF No. 9].  He alleges that an employee of the FOC threatened

to recommend that he be jailed if he mentioned an agreement between the

parties in open court.  [*Id.*, PageID.90-91].  But he does not allege that the

FOC ever did recommend that he be jailed or that the state court acted on

such a recommendation; he specifies no injuries caused by an FOC

employees.

And though Thompson claims that he is not seeking to set aside the

state court judgments because of alleged legal error, his requests for relief

leave no doubt that he is attempting to make an end-run around the state

11

court judgments about child custody and the marital property.  He requests

an order "clarifying all previous Judgements [*sic*] and orders" from the state

court about his alleged property and that those judgments and orders be

"deemed dismissed for lack of jurisdiction" and "considered null and void."

[ECF No. 9, PageID.109].  Thompson requests an award of the market

value of the rents for the Oxford property, an order that the current

occupants of that property be removed, and an award of custody of his son.

[*Id.*, PageID.109-110].   He asks for "[an] order closing the child support

account, removing arrears, reimbursing Thompson for all monies ordered,

garnished, stolen or seized, plus the 66% matching federal funds."  [*Id.*,

PageID.110].

Thompson lost in the state court and now invites this Court to review

and reject the state court judgments.  The sources of Thompson's claimed

injuries are the state court judgments themselves.  Thus, Thompson's

claims are barred by the *Rooker-Feldman* doctrine.  *Exxon Mobil,* 544 U.S.

at 284; *VanderKodde*, 951 F.3d at 402.

## IV.   Conclusion

The Court **RECOMMENDS** that defendants' motion to dismiss **[ECF**

**No. 30]** be **GRANTED**; that the entry of default against Paine **[ECF No. 27]**

be **VACATED**; and that Thompson's complaint be **DISMISSED** for lack of

subject matter jurisdiction.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 7, 2021


### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of

objections, **any non-objecting party must file a response** to the

objections, specifically addressing each issue raised in the objections in the

same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 7, 2021.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager